UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

DEBRA SLADE,

                        Plaintiff,

                        **DECISION AND ORDER**
                        11-CV-396A

v.

ALFRED UNIVERSITY,

                        Defendant.

---

I.    **INTRODUCTION**

Pending before the Court is a motion by defendant Alfred University ("Alfred") to dismiss portions of plaintiff's complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP").[1] Out of four causes of action in the complaint, Alfred seeks to dismiss the second cause of action and part of the fourth cause of action. Alfred wants to dismiss the second cause of action because it alleges a failure to pay an employee benefit in violation of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001–1461, even though the benefit in question does not fall under ERISA.

---

[1] Alfred has titled its motion a "Partial Motion to Dismiss and/or for Partial Summary Judgment" and has submitted a statement of undisputed material facts under Local Civil Rule 56(a)(1). Since Alfred's arguments, however, are legal in nature, and since the Court will not weigh evidence when assessing the legal sufficiency of a complaint, the Court will assess the motion only under FRCP 12.

Alfred also wants to dismiss so much of the fourth cause of action that alleges retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e to 2000e-17, because she did not exhaust her administrative remedies for that issue. Plaintiff contends that ERISA covers the employee benefit in question and that her claim of Title VII retaliation is reasonably related to the sexual harassment that she set forth in her verified complaint to the New York State Division of Human Rights ("SDHR").

The Court has deemed the motion submitted on papers pursuant to FRCP 78(b). For the reasons below, the Court denies the motion.

## II.  BACKGROUND

This case concerns allegations that Alfred discriminated against plaintiff on the basis of sex, disability, and the desire to use an ERISA employee benefit. According to the complaint, plaintiff began working for Alfred in March 1998 in an administrative position titled Account Clerk. Plaintiff worked continuously for Alfred until her termination on or around October 28, 2009. Plaintiff received a promotion in 2001 to the position of Research Account Specialist and obtained excellent employment reviews at all times during her employment at Alfred. The excellent employment reviews did not change even after plaintiff received a diagnosis of bipolar disorder in 2001. During her time with Alfred, one of plaintiff's employment benefits was eligibility for participation in a program called the Alfred University Tuition Remission Plan (the "Plan"). Under the Plan, any

dependent children that plaintiff had would receive full tuition remission, minus financial aid received from other sources, if they gained admission to Alfred and chose to attend college there.  The ability to join the Plan mattered to plaintiff because she had two children, ages eight and six, when she started working at Alfred.

The problems that plaintiff allegedly experienced with Alfred stemmed from two different sources starting around 2008.  The first source concerned sexual harassment.  In 2008, a man named Jeffrey Porter ("Porter") became the head of an entity at Alfred titled the Office of Sponsored Research Administration.  The complaint does not explain what this office does, but the record suggests that plaintiff worked in this office and that Porter became her supervisor.  Beginning around December 2008, Porter made intermittent remarks to plaintiff about her clothing that had a sexually suggestive tone.  The complaint describes one specific incident when Porter allegedly told plaintiff that he wanted to see her pose as a "nude model" in the manner of the models used in art classes.  When plaintiff told Porter that she did not welcome his comments, he "began a relentless retaliatory campaign against Plaintiff, which was wholly endorsed and ratified by Defendant."  (Dkt. No. 1 ¶ 35.)  The sexual harassment that plaintiff allegedly endured aggravated the symptoms of her bipolar disorder.

The second source of friction between plaintiff and Alfred concerned an unspecified construction project that began around April 2009.  According to

plaintiff, the construction work "created a significant amount of noise, dust, and septic fumes in Plaintiff's work area." (*Id.* ¶ 37.) The construction work allegedly caused plaintiff to develop health problems including severe and chronic migraine headaches, sinusitis, blurred vision, respiratory problems, fatigue, and stress. Plaintiff asked Alfred for some sort of accommodation while the construction work continued. Alfred promised to move plaintiff to another building but never followed through on the promise. The continued exposure to the construction project caused plaintiff to take large amounts of paid time off that she claims were protected by the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. §§ 2601–2654. Alfred allegedly reacted to plaintiff's absences in two ways. Alfred refused to recognize some or all of plaintiff's leave time as protected by the FMLA. Additionally, Alfred began to use plaintiff's absences as a pretext for discipline and eventual termination in ways that similarly situated male employees did not have to experience. Alfred finally fired plaintiff on or around October 28, 2009.

Plaintiff's termination coincided with one other issue that allegedly rose in the last weeks of her employment. On or around October 14, 2009, plaintiff filed a claim to receive benefits under the Plan. The complaint does not say so explicitly, but the filing of this claim implies that at least one of plaintiff's two children had chosen to matriculate at Alfred. Plaintiff believes that she was fired

just two weeks after filing this claim in part because Alfred sought to avoid paying her any benefits under the Plan.

In response to her termination, plaintiff filed a verified complaint with SDHR on March 5, 2010. Plaintiff filed the SDHR complaint *pro se* and used a standard form that SDHR provides. In her complaint, plaintiff checked off that she experienced discrimination on the basis of disability; on the basis of sexual harassment; and on the basis of retaliation stemming from her complaints about the construction project and her claim for benefits under the Plan. Under a section of the verified complaint titled "Acts of Discrimination," plaintiff checked off that the discrimination that she experienced consisted of termination, sexual harassment, other forms of harassment, a denial of leave time or other benefits, a denial of accommodation for disability, and disciplinary notices. Plaintiff also attached to the complaint three typewritten pages of notes that provided details of her complaints about leave time, sexual harassment, and other harassment. In a decision dated November 10, 2010, SDHR dismissed plaintiff's complaint. In a letter dated February 9, 2011, the Equal Employment Opportunity Commission ("EEOC") issued a "right to sue" letter that adopted SDHR's findings.

After her agency proceedings ended, plaintiff commenced this action by filing her complaint on August 12, 2011. The complaint contains four causes of action. In the first cause of action, plaintiff accuses Alfred of violating the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101–12213, by

failing to accommodate her disability and by wrongfully terminating her because of that disability. In the second cause of action, plaintiff accuses Alfred of violating ERISA by terminating her to avoid paying benefits under the Plan. The heart of the second cause of action is plaintiff's belief that the Plan is a qualifying employee benefits plan under ERISA. In the third cause of action, plaintiff accuses Alfred of interfering with her right to take leave protected by the FMLA and of retaliating against her for attempting to exercise her rights under that statute. In the fourth cause of action, plaintiff accuses Alfred of sexual harassment and retaliation in violation of Title VII.

Through the pending motion, Alfred seeks to dismiss two parts of plaintiff's complaint. Alfred wants the second cause of action dismissed because the Plan is simply an unfunded scholarship program that does not fall within the scope of ERISA. Alfred also wants the fourth cause of action dismissed to the extent that it alleges Title VII retaliation in addition to sexual harassment. Alfred seeks this partial dismissal because plaintiff did not allege Title VII retaliation in her SDHR complaint, meaning that she never exhausted her administrative remedies as to that issue. Plaintiff opposes Alfred's motion by noting that the Plan does in fact fall within the scope of ERISA. Plaintiff also argues that, at worst, her claim of Title VII retaliation is reasonably related to the sexual harassment claim that she submitted to SDHR and that SDHR investigated, meaning that the Court should allow it to go forward.

### III.  DISCUSSION

#### A.  *FRCP 12(b)(6) Generally*

Through its motion, Alfred challenges the legal sufficiency of plaintiff's second and fourth causes of action. "A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." FRCP 8(a)(2). "'A short and plain statement of the claim' does not mean 'a short and plain statement of the eventual jury charge for that claim' or 'a short and plain recitation of the legal elements for that claim.' FRCP 8(a)(2) requires a plaintiff to state, in concise but plausible fashion, what he currently thinks a defendant actually did to him, subject to revision during later discovery." *Beswick v. Sun Pharm. Indus., Ltd.*, No. 10–CV–357A, 2011 WL 1585740, at *5 (W.D.N.Y. Mar. 4, 2011) (Arcara, *J.*). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009) (internal quotation marks and citations omitted). The Court will apply FRCP 8(a)(2) "construing the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable

inferences in the plaintiff's favor." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (citation omitted).

## B.     *Plaintiff's ERISA Claim*

Under ERISA, "[i]t shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan . . . or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan . . . ." 29 U.S.C. § 1140.  ERISA's definition of "employee welfare benefit plans" includes "scholarship funds." 29 U.S.C. § 1002(1).  "[A] 'plan, fund, or program' under ERISA is established if from the surrounding circumstances a reasonable person can ascertain the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits."  *Grimo v. Blue Cross/Blue Shield of Vt.*, 34 F.3d 148, 151 (2d Cir. 1994) (alteration in original) (citations omitted).  Here, plaintiff has made a factual allegation in her complaint that the Plan operates as an employee benefit plan under ERISA, and that Alfred terminated her in part because she wanted to make use of the Plan for her children.  Plaintiff explained in her complaint that her claim under the Plan must have had something to do with her termination because her termination came only two weeks after she submitted the claim.  Whether plaintiff can substantiate her allegations after discovery is another matter entirely.  For now, however,

8

plaintiff has set forth a plausible and legally sufficient claim of discrimination in violation of ERISA.

The factual information that Alfred has submitted in support of its motion to dismiss may yet be decisive in eliminating plaintiff's cause of action, but the Court will not consider it yet. "In ruling on a motion pursuant to Fed. R. Civ. P. 12(b)(6), the duty of a court is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 113 (2d Cir. 2010) (citation omitted). Here, Alfred has submitted an affidavit from Giovina Lloyd, its Vice President of Business and Finance, to try to establish that "Alfred does not set aside any money, or a specific amount of money, to finance tuition remission awards." (Dkt. No. 4-3 ¶ 9.) The apparent purpose of this information is to show that the Plan is an unfunded program and thus falls under an ERISA regulatory exemption stating that "the terms 'employee welfare benefit plan' and 'welfare plan' shall not include a scholarship program, including a tuition and education expense refund program, under which payments are made solely from the general assets of an employer or employee organization." 29 C.F.R. § 2510.3-1(k); *see also Cal. Div. of Labor Stds. Enforcement v. Dillingham Constr., N.A., Inc.*, 519 U.S. 316, 327 (1997) ("The Secretary has carried this funded/unfunded distinction into areas that are, we think, analogous to that of apprenticeship programs. Although none of these regulations specifically

answers the question whether an unfunded apprenticeship program is covered by ERISA, they suggest—as does our decision in [*Mass. v. Morash*, 490 U.S. 107 (1989)]—that it is not.") (citations omitted). Alfred's factual contention may turn out to be true after discovery. The only way to dismiss plaintiff's ERISA claim right now, however, would be to accept that contention at face value and to deny plaintiff the chance to conduct discovery as to the actual language of the Plan, which currently is not part of the record, and as to any documentary evidence about how the Plan actually operates. The Court declines to do so and denies this aspect of Alfred's motion.

    C.    *Plaintiff's Title VII Retaliation Claim*

The Court now will assess Alfred's argument that plaintiff cannot allege Title VII retaliation because she did not allege that kind of retaliation in her SDHR complaint. "A plaintiff may bring an employment discrimination action under Title VII or the ADEA only after filing a timely charge with the EEOC or with a State or local agency with authority to grant or seek relief from such practice. Exhaustion of remedies is a precondition to suit, and a plaintiff typically may raise in a district court complaint only those claims that either were included in or are 'reasonably related to' the allegations contained in her EEOC charge." *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 82–83 (2d Cir. 2001) (internal quotation marks and citations omitted). "A claim raised for the first time in the district court is 'reasonably related' to allegations in an EEOC charge where the conduct

complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination. We have described this as essentially an allowance of loose pleading." *Id.* at 83 (internal quotation marks and citations omitted). "In determining whether claims are reasonably related, the focus should be on the factual allegations made in the [EEOC] charge itself, describing the discriminatory conduct about which a plaintiff is grieving." *Deravin v. Kerik*, 335 F.3d 195, 201 (2d Cir. 2003) (alteration in original) (internal quotation marks and citations omitted). Courts engage in fact-based analysis of reasonably related claims because they recognize "that EEOC charges frequently are filled out by employees without the benefit of counsel and that their primary purpose is to alert the EEOC to the discrimination that a plaintiff claims she is suffering." *Butts v. City of N.Y. Dep't of Hous. Preservation & Dev.*, 990 F.2d 1397, 1402 (2d Cir. 1993), *superseded by statute on other grounds as stated in Hawkins v. 1115 Legal Serv. Care*, 163 F.3d 684 (2d Cir. 1998).

Here, several factors weigh in favor of allowing plaintiff's Title VII retaliation claim to proceed as reasonably related to the sexual harassment claim in her *pro se* SDHR complaint. In the SDHR complaint, plaintiff checked off that she experienced discrimination in the form of sexual harassment and retaliation. The retaliation box does not explicitly mention sexual harassment, but its use by plaintiff would have altered SDHR to inquire broadly about retaliatory conduct. In the section of the complaint titled "Acts of Discrimination," plaintiff again checked

off that she experienced sexual harassment.  Plaintiff also checked boxes labeled "Fired me / laid me off" and "Gave me a disciplinary notice or negative performance evaluation."  (Dkt. No. 4-2 at 20.)  *Cf. Williams v. N.Y.C. Hous. Auth.*, 458 F.3d 67, 71 (2d Cir. 2006) (finding that a sex discrimination claim was reasonably related to a reported retaliation claim where "specific factual allegations put the EEOC on notice that, in addition to a retaliation claim, a gender discrimination claim may also exist").  Plaintiff has alleged other reasons why Alfred improperly disciplined or fired her.  Notably, however, the form SDHR complaint that plaintiff used has no checkbox in the "Acts of Discrimination" section that uses the word "retaliation" or that would allow a *pro se* complainant like plaintiff to separate Title VII retaliation from other forms of retaliation.  Additionally, the "Additional Information" section of plaintiff's SDHR complaint kept by SDHR but not served on Alfred (*see* Dkt. No. 6-1 at 14–17) hints at repeated sexual advances and stalking behavior by her supervisor, Porter.  Under these circumstances, SDHR was sufficiently on notice of discriminatory behavior based on sex that it would have investigated whether plaintiff complained to any supervisors and whether anything happened to her in response to those complaints.  The Court thus finds that plaintiff's Title VII retaliation claim is reasonably related to the information about sexual harassment that she listed in her SDHR complaint.  Accordingly, the Court denies this aspect of Alfred's motion.

## IV.     CONCLUSION

For all of the foregoing reasons, the Court denies Alfred's motion to dismiss (Dkt. No. 4).  Alfred shall answer the complaint within 20 days of entry of this Decision and Order.

SO ORDERED.

*s/ Richard J. Arcara*
HONORABLE RICHARD J. ARCARA
UNITED STATES DISTRICT JUDGE

DATED: September 6, 2011